```
             UNITED STATES DISTRICT COURT
              MIDDLE DISTRICT OF FLORIDA
                 JACKSONVILLE DIVISION
```

DONALD S. FREEDMAN, M.D.,

     Plaintiff,

v.                                    Case No.  3:05-cv-81-J-12HTS

LINCOLN NATIONAL LIFE INSURANCE
COMPANY, a foreign corporation,

     Defendant.
_____

### **O R D E R**

#### **i. Status**

This cause is before the Court on Plaintiff's Second Motion to Compel Discovery from Defendant (Doc. #57; Plaintiff's Motion) and Defendant's Motion for Protective Order (Doc. #73; Defendant's Motion).  A Memorandum of Law in Support of Plaintiff's Second Motion to Compel Discovery from Defendant (Doc. #58; Plaintiff's Memorandum) was also filed.  Both motions are opposed.  Defendant's Response to Plaintiff's Second Motion to Compel Discovery from Defendant (Doc. #72; Defendant's Opposition); Plaintiff's Memorandum of Law in Response to Defendant's Motion for Protective Order (Doc. #79).

**ii. Discussion**

**A. Plaintiff's Motion**

Plaintiff "moves the Court for an Order compelling the Defendant to produce items responsive to Request Nos. 4, 8, 9, 10, 12, 13, 14, 15, 16, 17, 18, 21, 22, 23 and 24 of Plaintiff's First Request for Production of Documents[.]"  Plaintiff's Motion at 1.  Additionally, he seeks "better answers to Interrogatory Nos. 10 through 13 of Plaintiff's First Set of Interrogatories to Defendant."  *Id*.

**1. Request 4**

This item asked for "all internal documents or records of communications, including but not limited to memoranda, letters, faxes, notes or electronic communications, that refer or relate in any way to Dr. Freedman, the policies [at issue] or the claim."  Plaintiff's Memorandum at 3 (capitalization omitted).  Lincoln National responded, in part, by asserting all responsive documents had been produced "as part of Defendant's [i]nitial disclosures[.]"  *Id*.  Defendant raised no objections and did not assert any privileges.  It now seeks to object on grounds including overbreadth and privilege.  Defendant's Opposition at 4.

Pursuant to Rule 33(b)(4), Federal Rules of Civil Procedure (Rule(s)), "[a]ny ground not stated in a timely objection [to an interrogatory] is waived unless the party's failure to object is excused by the court for good cause shown."  Further, "it is clear

that the procedures under Rule 34 [relating to requests for production] were intended to be governed by the same procedures applied under Rule 33." *Hall v. Sullivan*, 231 F.R.D. 468, 473 (D. Md. 2005); *see also Blackmond v. UT Med. Group, Inc.*, No. 02-2890 MAV, 2003 WL 22385678, at *1 (W.D. Tenn. Sept. 17, 2003) (quoting *In re United States*, 864 F.2d 1153, 1156 (5th Cir. 1989) for proposition that failure to timely object to request for production operates as waiver of objections); Middle District Discovery (2001) at 11. The Court does not find good cause for the failure to object in regard to ordinary considerations of relevance and burdensomeness. The request was unambiguous, at least to the extent it sought documents referring to Dr. Freedman, the policies, or the claim.

However, in considering whether a privilege claim has been waived, the Court must be especially circumspect. The importance of privileges and work product protection, often called the work product privilege, cannot be ignored. The proposition that privileges are waived simply by their untimely assertion has been described as unnecessarily draconian. *See Jayne H. Lee, Inc. v. Flagstaff Indus. Corp.*, 173 F.R.D. 651, 657 n. 16 (D. Md. 1997). Indeed, in regard to the attorney-client privilege, "binding former Fifth Circuit authority suggests that failure to assert the . . . privilege in a timely manner does not waive [it] even when the privilege is asserted for the first time in a motion for

reconsideration of a district court's order to produce." *FDIC v. Cherry, Bekaert & Holland*, 131 F.R.D. 596, 606 (M.D. Fla. 1990) (citing *S. Ry. Co. v. Lanham*, 403 F.2d 119, 133-34 (5th Cir.1968), *reh. denied* (*en banc*), 408 F.2d 348 (5th Cir. 1969)). Under the circumstances, the Court will permit the assertion of privilege.

Plaintiff also argues Defendant has not complied with Rule 26(b)(5), which requires a description of documents withheld as privileged or trial preparation material. *See* Plaintiff's Memorandum at 5. A claim of work product or attorney-client privilege should be supported by "details including: date, author and all recipients of the document, subject matter, purpose, and an explanation as to why the document should be privileged and not produced in discovery." *Coltec Indus., Inc. v. Am. Motorists Ins.*, 197 F.R.D. 368, 373 (N.D. Ill. 2000); *see also* Middle District Discovery (2001) at 14, 17. Defendant indicates "it is providing Plaintiff with a privilege log[.]" Defendant's Opposition at 4. It will be ordered to ensure such log is adequate in view of the above standard. Additionally, Lincoln National must provide information demonstrating its standing to assert the privileges claimed.

**2. Requests 8, 9 and 10**

Request 8 sought all documents in the underwriting files of the policies at issue. Plaintiff's Memorandum at 5. "All actuarial or statistical data referred to or used by [Defendant] in

- 4 -

the process of underwriting the [p]olicies" was elicited by Request 9. *Id.* at 6. Request 10 demanded "all documents identifying the individuals involved in the underwriting process for the policies." *Id.* (capitalization omitted).

Plaintiff maintains "the materials sought by these Requests relate to Lincoln National's own interpretation of what Dr. Freedman's 'occupation' was[.]" *Id.* at 7. Further, the documents "would show the intended scope of the coverage[,]" an issue said to be related to Counts I and II of the Complaint (Doc. #2; Complaint). *Id.*

Count I of Dr. Freedman's Complaint alleges the breach of insurance contracts. Plaintiff claims Defendant contravened the disability policies at issue "by failing to pay the insurance proceeds owing to Dr. Freedman." Complaint ¶ 35. Defendant contends "Dr. Freedman is not disabled as defined by the policies[.]" Answer and Defenses to Complaint and Counterclaim (Doc. #5) ¶ 36; *see also* Defendant's Motion at 2. The meaning of "disability" pursuant to the policies, including the proper interpretation of terms used to define it, thus appears to be important to the case. Defendant acknowledges discovery "aimed at acquiring knowledge as to whether Plaintiff satisfies the disability definitions" would be relevant. Defendant's Motion at

2. Necessarily included within that knowledge is any information needed to interpret the policy.[1]

Lincoln National responds to these Requests, though, by stating "Plaintiff's 'occupation' is defined by his policies, not from [its] 'interpretation.' The policies explicitly state that Plaintiff's occupation is determined by what activities he was engaged in at the start of his disability; not what . . . [Defendant] believes his listed occupation entails." Defendant's Opposition at 6 (emphasis omitted). Defendant also argues the materials are irrelevant to Count II of the Complaint. *Id.* at 8.

To the extent the requested documents show Defendant's ongoing understanding of Plaintiff's occupational activities (which Lincoln National neither concedes nor refutes, *see id.* at 6), they would seem to be at least marginally relevant. Even if Plaintiff's occupation is defined only by his activities as of a certain point in time, his unchallenged assertion that he "at all times material to this case, from the date of the issuance of the policies up through the date of . . . disability," performed the duties of an OB/GYN, Plaintiff's Memorandum at 7, suggests Defendant's longitudinal understanding of his activities may be helpful. Moreover, Plaintiff's argument that materials bearing upon the

---

[1] As will be discussed in section ii(A)(4), it appears the parties are at odds regarding whether extrinsic information will ultimately be required to prove the meaning of the policies' terms.

intended scope of coverage are relevant to Count I stands unrefuted.

Nevertheless, while some documents in an underwriting file may relate to occupational activities or intended scope of coverage, it is not apparent how actuarial or statistical data, or the names of certain individuals (particularly as the discovery period, and hence the time for considering further depositions, is now closed), would do so. Accordingly, in keeping with Plaintiff's reasoning, Defendant will be compelled to provide only documents from the underwriting files that refer to Dr. Freedman's occupation and the duties he performed, and documents interpreting or explaining the scope of coverage under the policies.

### 3. Request 12

This Request expansively describes the claims handling documentation sought, which Plaintiff asserts is relevant to Count II. *See id.* at 8-9. More particularly, according to Dr. Freedman, "these materials are relevant to prove [his] claim was not appropriately and fairly evaluated[.]" *Id.* at 9.

Count II of the Complaint alleges repudiation. Plaintiff asserts Defendant's actions amount "to an unqualified declaration . . . of its refusal to perform the obligations according to the . . . policies, and serve[] as a repudiation of the policies[.]" Complaint ¶ 43.

"A repudiation is (a) a statement by the obligor to the obligee indicating that the obligor will commit a breach that would of itself give the obligee a claim for damages for total breach . . . or (b) a voluntary affirmative act which renders the obligor unable or apparently unable to perform without such a breach." Restatement (Second) of Contracts § 250 (1981); *see Weisfeld v. Peterseil School Corp.*, 623 So.2d 515, 519 n.1 (Fla. Dist. Ct. App. 1993)(concurrence adopting Restatement definition). Communication of the repudiator's intentions is thus key. *See, e.g., Keefe Co. v. Americable Int'l, Inc.*, 755 A.2d 469, 475 (D.C. 2000) ("[T]he repudiating party must have *communicated*, by word or conduct, unequivocally and positively its intention not to perform.") (emphasis added, internal quotation marks omitted).

Given the nature of repudiation, the instant discovery request would not be directly relevant in determining whether repudiation occurred. Instead, the focus is properly upon what was actually communicated (by word or deed) to the aggrieved party. Therefore, Plaintiff's justification for Request 12 is not persuasive.

**4.  Requests 13, 14, 23, and 24**

Through these Requests Plaintiff asked for documents, including promotional materials, describing or referencing coverage under "own occupation" policies. Plaintiff's Memorandum at 10, 17. Dr. Freedman urges said information is relevant to interpreting

"occupation" or "own occupation" as employed by the policies "at relevant times, and also how the Own Occupation Benefit Rider effects or alters the remaining provisions of the policies." *Id.* at 11.

The parties apparently disagree as to whether the terms as used in the policies are ambiguous or potentially ambiguous. *Compare id.* at 10-11 with Defendant's Opposition at 10. As the Court will not, at this stage, make a final determination about whether an ambiguity exists, information germaine to the meaning of the terms is a permissible object of discovery.[2]

Defendant objects to the lengthy time period embraced by the Requests, Defendant's Opposition at 10, and their lack of direct relationship to Plaintiff's particular policies. *Id.* at 12. No alternative time span or other limitation is proposed, but it seems reasonable to restrict this discovery to documents describing the scope of coverage of provisions matching those in Dr. Freedman's policies at the time he made his claim, and to documents defining "occupation" or "own occupation."

    5.  **Request 16**

This item describes documents "interpreting or addressing the meaning of the phrase 'Own Occupation' as it applies to an insured

---

[2] Consequently, Defendant will be compelled to respond to Request 15, which sought documents "interpreting or addressing the meaning of the phrase 'Own Occupation' as used in the [p]olicies." Plaintiff's Memorandum at 12.

physician practicing in the field of obstetrics and gynecology." Plaintiff's Memorandum at 13.

Lincoln National "states that there are no documents responsive to this request that were prepared for or relate to Plaintiff's claims." *Id.* Defendant also indicates it does not have "some master list of what any specific occupation entails." Defendant's Opposition at 14. In light of the information provided, Plaintiff's Motion will be denied as to this Request.

### 6. Requests 17 and 18

Request 17 asked for documents "describing the duties of a physician specializing in obstetrics and gynecology[,]" Plaintiff's Memorandum at 14, whereas Request 18 sought documents "describing the duties of a physician specializing in obstetrics, or a physician specializing in gynecology." *Id.* at 15. In response to each, "Defendant states that there are no documents responsive to this request that were prepared for or relate to Plaintiff's claims." *Id.* at 14, 15. As with Request 16, no further action will be required on Defendant's part. Any tangential benefit to be derived from examining descriptions of duties undertaken by individuals other than Plaintiff would be outweighed by the intrusiveness of the discovery.

### 7. Requests 21 and 22

These Requests demand all documents explaining or describing codes used for doctors practicing obstetrics, gynecology, or both.

*Id.* at 15-16. Defendant explains that it has already provided a list of meanings for codes contained in Plaintiff's claim file. Defendant's Opposition at 15. "What Lincoln National objects to providing is any and all documents that may exist over the past twenty-five years or more that describe[] codes used to generally identify physicians, whether obstetricians, gynecologists, or both, regardless of whether those codes were ever used to refer to Plaintiff[.]" *Id.* Upon consideration of the parties' positions, the objection is upheld.

### 8. Interrogatories 10 and 11

Interrogatories 10 and 11 asked Defendant to identify documents prepared or used for evaluating, processing and responding to claims. Plaintiff's Memorandum at 18. Plaintiff's justification of these items, that they are relevant to Count II "to prove that Dr. Freedman's claim was not appropriately and fairly evaluated[,]" *id.* at 19, is not persuasive pursuant to the Court's discussion of repudiation *supra*. Accordingly, answers will not be compelled.

### 9. Interrogatory 12

This question essentially parallels Requests 17 and 18. *See id.* at 14-15, 19. Thus, it fails in similar fashion.

### 10. Interrogatory 13

Interrogatory 13 instructed Defendant to

> state the full name, address and telephone number of each
> person . . . who participated in the design, authorship

- 11 -

> or development of promotional materials, advertising materials, brochures, field literature or other [d]ocuments which were provided to [y]our employees or to insurance agents . . . describing the scope and/or nature of the 'own occupation' coverage provided under the [p]olicies purchased by Dr. Freedman[.]  As to each person identified, please provide a specific factual description of that person's involvement in the design, authorship or development of the referenced materials, and, if employed by [y]ou, their position(s) held and dates of employment.

*Id.* at 20.

Defendant contends the question is overbroad and burdensome. Defendant's Opposition at 17.  The Court is inclined to agree. Also, as mentioned in connection with Request 10, the discovery period, and hence the time for considering further depositions, is now closed.  The potential usefulness of identifying information therefore appears especially attenuated. Upon consideration, then, Defendant will not be compelled to answer this interrogatory.

**11. Conclusion**

In accordance with the foregoing, Plaintiff's Motion (Doc. #57) is **GRANTED** to the extent Defendant shall

a.  fully respond to Request 4 but for those documents in regard to which a privilege has been claimed.  If not already done, it must provide an adequate privilege log within five (5) days from the date of this Order;

b.  respond to Request 8 by revealing any documents from Dr. Freedman's underwriting files that refer to his occupation and the

- 12 -

duties he performed, and documents interpreting or explaining the scope of coverage under the policies;

   c.   respond to Requests 13, 14, 23, and 24 to the extent of producing documents describing the scope of coverage of provisions matching those in Dr. Freedman's policies at the time he made his claim, and documents defining "occupation" or "own occupation;"

   d.   fully respond to Request 15.

Aside from the provision of a privilege log, compliance herewith shall occur no later than ten (10) days from the date of this Order.

Otherwise, Plaintiff's Motion is **DENIED**.

**B.  Defendant's Motion**

Defendant requests "a protective order precluding the depositions of Robert McCabe, Eunice Ford and [a designated] corporate representative [of Lincoln National.]" Defendant's Motion at 15. Mr. McCabe and Ms. Ford are represented to be employees of Metropolitan Life Insurance Company (MetLife), a third-party administrator. *Id.* at 2-3 n.3, 6, 8.

Defendant argues the intended depositions "are aimed at nothing more than burdening MetLife with unneeded and irrelevant discovery, harassing a senior MetLife executive and attempting to try a 'bad faith' case under the guise of a 'repudiation' claim." *Id.* at 9. "However, in general . . . a party may not move for a protective order to protect the interests of another, but may move

to protect the party's own interests when discovery is sought from another." *Am. Rock Salt Co. v. Norfolk S. Corp.*, 228 F.R.D. 426, 466 (W.D.N.Y. 2004) (internal quotation marks omitted). Defendant has failed to articulate, in relation to the two proposed third-party depositions, how its own interests would be impacted such that a protective order is necessary.

Regarding "the corporate representative deposition, Lincoln National objects that [none] of the subjects are remotely relevant[.]" Defendant's Motion at 7. In brief, Plaintiff seeks to depose the representative on Defendant's policies and procedures for evaluating benefit claims, advertising and other materials relating to "own occupation" coverage, documents describing duties of obstetricians and gynecologists, codes used for those specialties, and its underwriting procedures. *See* Matters on Which Examination is Requested (Matters), attached to Defendant's Motion as part of Exhibit A, at [externally numbered] 26-27. Further, he wants to inquire into the relationship between Lincoln National and Metlife, "Defendant's efforts to identify and locate [d]ocuments response to Plaintiff's First Request for Production[,]" and "[t]he identification, authentication and testimony regarding the contents of" certain documents. *Id.* at [externally numbered] 27.

Some of these matters are not relevant, Defendant contends, because they "are not limited to Plaintiff's policies or

- 14 -

Plaintiff's claim, and . . . cover a time span of more than twenty-five years." Defendant's Motion at 7. Testimony about general underwriting procedures is asserted to be "completely irrelevant to any claim, fact or cause of action alleged . . . ." *Id.*

Concerning the last item (document identification, etc.), Defendant objects due to vagueness and overbreadth.[3] It states "[t]here are literally thousands of documents produced in this matter and without some limiting language it is impossible to identify one person (or even a couple) that can properly" identify and authenticate them. *Id.*

Upon due consideration, and consistent with the Court's treatment of Plaintiff's Motion, Defendant's Motion (Doc. #73) is **GRANTED** to the extent Defendant need not designate a corporate representative to testify to

    1.   the material identified in items 1 or 7 of the Matters;

    2.   the content of items 2 or 6 of the Matters, except to the extent the representative shall be prepared to answer questions regarding documents describing the scope of coverage of provisions matching those in Dr. Freedman's policies at the time he made his claim, and documents defining "occupation" or "own occupation;"

    3.   the subject matter of items 3 or 4 of the Matters, except to the extent the representative shall be prepared to answer

---

[3] While Defendant refers to Plaintiff's paragraph relating to Lincoln National's efforts to respond to particular discovery, *id.*, it does not explain how that item is objectionable. Further, it fails to demonstrate inquiry into the relationship between itself and Metlife would be improper.

questions concerning Defendant's position that no documents fitting the description therein were prepared for or relate to Plaintiff's claims, and that no master list is used to determine what any specific occupation entails;

    4.   occupation codes cited in item 5 of the Matters, aside from those appearing in Plaintiff's claim file;

    5.   any documents referenced in item 10 of the Matters, unless Plaintiff specifies, with at least five (5) days notice to Defendant, which individual documents he desires to have identified or authenticated.

Otherwise, Defendant's Motion is **DENIED**.

**DONE AND ORDERED** at Jacksonville, Florida this 23rd day of March, 2006.

                                         /s/        Howard T. Snyder
                                       HOWARD T. SNYDER
                                       UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record and
    *pro se* parties, if any